**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID BENNETT,<br>Plaintiff,<br>v.<br>JENNIFER DAVIS, et al.,<br>Defendants. | No. 2:25-cv-03406-DAD-ICD<br><br>ORDER |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Plaintiff's complaint, ECF No. 1.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. *See McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1) now Fed. R. Civ. P. 8(d)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Kimes v. Stone*, 84 F.3d 1121, 1129 (9th Cir. 1996). Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

To survive a screening, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Because Plaintiff is proceeding pro se, however, the Court construes the complaint liberally and affords Plaintiff the benefit of any doubt. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

**I. PLAINTIFF'S ALLEGATIONS**

Plaintiff David Bennett filed the complaint on November 24, 2025, while housed at the Yolo County Jail in Woodland, California. ECF No. 1 at 1. Plaintiff names three groups of Defendants. The first group consists of jail officials Sergeant Mark Hall, Sergeant Gustavo Velazquez, Lieutenant Dennis Gaines, Lieutenant Tabatha Hamblin, Sergeant Wenneker, Quontel Willis, Cleon Jones, Vaughn Davis, and Lieutenant Jennifer Davis, the jail's Professional Standards Officer. *Id.* at 3. The second group consists of Defendants Hamblin, Hall, and Gaines, together with Sergeant Steven Praest, Sergeant Keenan, "Yolo County Jail Kitchen Staff," and National Food Group, which Plaintiff identifies as the source of the soy milk he receives. *Id.* at 6, 8, 30. The third group consists of the unnamed Director of ViaPath Technologies, which Plaintiff alleges charges inmates to use the jail's kiosks and tablets. *Id.* at 9–10. Plaintiff sues each Defendant in an individual capacity, an official capacity, and a municipal capacity, and he seeks declaratory relief, a preliminary injunction, and compensatory, nominal, and punitive damages. *Id.* at 6, 8–9, 20.

Plaintiff's first set of claims concerns his property. Plaintiff alleges that, on May 6, 2025, he returned to the jail from Atascadero State Hospital with about 30 pounds of property in six paper bags, including legal papers and legal mail, books, magazines, religious magazines, artwork and other writings, shoes, and photocopies of his identification card, naturalization certificate, and birth certificate. ECF No. 1 at 4, 10–11, 13–14, 25. The books included two titles that a friend purchased for him from the Human Rights Defense Center in January 2025 for a total of $42.94. *Id.* at 11–12, 24. During intake, Plaintiff told Defendants Vaughn Davis, Gaines, Willis, Jones, and Wenneker that all his property was legal material that he needed to keep with him because of

federal court deadlines and his pro per status. *Id.* at 12. Defendants Hall, Vaughn Davis, and Jones argued with Plaintiff that his property was in his property bag, and, according to Plaintiff, the officers "picked and chose" which property he could keep. *Id.* Plaintiff filed seven grievances seeking the rest of his property. *Id.* at 4, 12.

Plaintiff alleges that Defendants Jones, Gaines, Hall, Velazquez, Vaughn Davis, Wenneker, and Jennifer Davis then came to his cell and told him that his property was in the evidence room, that it had not been destroyed, and that they were meeting about providing him a locker and combination lock so that he could exchange property during his time out of his cell. Id. at 12–13. Defendant Hall sent Plaintiff a note directing him to have someone bring a lock to the records office. *Id.* at 4, 22. Around July 11, 2025, Defendant Hall and others provided a locker and lock, but with only about 15 pounds of property in three bags. *Id.* at 13–14. Defendant Velazquez then told Plaintiff, at his locker, that he had destroyed Plaintiff's property because he is "not allowed to have Law Books, Magazines, or Religious Magazines." *Id.* at 14; *see also id.* at 5. Plaintiff alleges that the missing property includes legal mail and briefs, the Human Rights Defense Center books, the copies of his identity documents, numerous religious and secular magazines, artwork, screenplays, a book he wrote, poems, and shoes. *Id.* at 13–14. Plaintiff alleges that the loss has caused him emotional distress and will impair his ability to obtain housing and employment upon his release. *Id.* He states that he submitted a state tort claim but that "It was never filed by the state." *Id.* at 3.

Plaintiff also alleges that the jail did not provide grievance forms, screened out or withheld his grievances, resolved his property grievances through a meeting rather than a "grievance hearing," and has not responded to his inmate request forms since his arrest in 2021. *Id.* at 2, 4–6, 15. He alleges that Defendants Hall, Gaines, Wenneker, Hamblin, Willis, Jones, Vaughn Davis, and Jennifer Davis refused to hear four additional grievances about his missing property. *Id.* at 14–15. Plaintiff submitted requests under the California Public Records Act for copies of his inmate request forms and for his disciplinary and classification records and related policies, and Defendant Jennifer Davis denied the requests. *Id.* at 15, 21. Plaintiff also alleges that he has been placed on 23-hour lockdown in disciplinary housing without being told why, even

though jail policy forbids segregating an inmate unless he poses a serious threat. *Id.* at 6, 13, 15.

Plaintiff's second set of claims concerns his religious practice. Plaintiff, who identifies himself as a Black Muslim, alleges that Defendants denied him a halal diet and the items he needs to practice his faith. *Id.* at 7, 16–17. On June 27, 2025, Plaintiff submitted a request to Defendant Gaines asking to be moved from the kosher diet to a halal diet. *Id.* at 21. Around that time, Defendants Hamblin, Gaines, Keenan, and Hall came to Plaintiff's cell and told him that he could not have a halal diet or the beef it requires, that the "Jewish Diet is the same as halal diet," and that he could not have a kufi, prayer rug, prayer beads, prayer oils, or a Quran. *Id.* at 17. Plaintiff further alleges that he has been fed pork in the kosher diet, denied religious magazines and Muslim religious services, and required to pay to read the Quran on the jail's kiosk. *Id.* at 7, 17. He alleges that ViaPath charges him $7 per hour to have an audiobook of the Quran read to him on the kiosk and tablets, a service he contends should be free. *Id.* at 7, 9–10. Plaintiff asserts that these deprivations violate the First and Fourteenth Amendments, the Religious Freedom Restoration Act (RFRA), and the Religious Land Use and Institutionalized Persons Act (RLUIPA), and that ViaPath's charges also violate the Sherman Act, the False Claims Act, and the Racketeer Influenced and Corrupt Organizations Act (RICO). *Id.* at 6–7, 9–10.

Plaintiff also challenges his kosher meals and soy milk. In a June 2025 grievance, Plaintiff complained that the kosher diet consists of small portions served on a five-meal rotation, while inmates on the regular diet receive more variety, and that he suffers from hunger, malnutrition, and stomach pain. *Id.* at 8, 28. The response stated that Plaintiff's kosher diet was approved by a certified nutritionist and complied with Title 15, and Defendant Hamblin found that response sufficient at the second level of review. *Id.* at 28–29. In an October 2025 grievance, Plaintiff complained that the powdered soy milk he receives causes stomach pain and constipation, tastes bitter on some days and too sweet on others, and lacks nutritional labeling. *Id.* at 8, 26. The response provided the product's nutrition facts and advised Plaintiff that he could return to regular milk, and Defendant Hamblin affirmed that response at the second level. *Id.* at 26–27, 30. Plaintiff contends that the soy milk's nutrition facts are false and that the failure to label the soy milk and kosher meals violates federal food-labeling requirements, amounts to false advertising,

and denies him "reading material" in violation of the First Amendment. *Id.* at 8–9, 20.

Finally, Plaintiff alleges that, since his return from the state hospital, Defendants Hamblin, Hall, Gaines, Wenneker, Keenan, Praest, and ViaPath have used his housing unit as a "sting operation torture chamber targeting Muslims." *Id.* at 18. He alleges that ViaPath and jail staff have used "T.V. Police webcast" announcements and "Amber Alerts" to label him a terrorist and have promised to answer his prayers if he abandons Islam; that ViaPath impersonated the FBI's online crime-reporting center; that other inmates, "working for Defendants," read the Quran backwards, cast "voodoo" spells on him, kick and bang on his door, and threaten to kill him unless he stops being Muslim; and that something placed inside him during a prior hospitalization is used to track his "biometric movement with sound engineering cloning technology" and to play role-playing games with his mind. *Id.* at 10, 18–20. Plaintiff also alleges that in 2023 Defendants used the jail's infirmary to subject him to "Religious Torture," leading to criminal charges that were later dismissed, and he refers to a separate action, *Bennett v. ViaPath Technologies*, No. 2:24-cv-0769-TLN-CKD, which he states this action is not intended to duplicate. *Id.* at 16.

## II. DISCUSSION

The Court first addresses whether Plaintiff has linked each named Defendant to the alleged deprivations, whether Plaintiff may proceed against Defendants in their official capacities, and whether the private companies Plaintiff names may be sued under § 1983. The Court then identifies the constitutional standard that governs Plaintiff's claims and addresses each of Plaintiff's theories: free exercise of religion, RLUIPA, and RFRA; equal protection; the destruction of his property; access to the courts; his meals and soy milk; his grievances, request forms, and public records requests; his housing placement; retaliation; his claims against ViaPath; and his remaining allegations. As explained below, the complaint states cognizable First Amendment free exercise claims against Defendants Hamblin, Gaines, Keenan, and Hall; a cognizable RLUIPA claim for injunctive relief against those Defendants in their official capacities; and a cognizable First Amendment claim against Defendant Velazquez based on the destruction of Plaintiff's books and magazines. The complaint does not state any other cognizable claim.

### A. Causal Connection

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

Supervisors are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Because "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct," *Iqbal*, 556 U.S. at 677, a supervisor may be held liable only if he or she personally participated in the constitutional violation or if there is a sufficient causal connection between the supervisor's wrongful conduct and the violation. *See Starr v. Baca*, 652 F.3d 1202, 1206-07 (9th Cir. 2011).

Here, Plaintiff alleges that Defendants Hamblin, Gaines, Keenan, and Hall personally told him that he could not have a halal diet or basic religious items, ECF No. 1 at 17, and that Defendant Velazquez told him that he had destroyed Plaintiff's books and magazines, id. at 5, 14. The sufficiency of those allegations is addressed below. By contrast, Plaintiff does not tie Defendant Praest to any specific act. Defendant Praest appears only in lists of Defendants whom Plaintiff describes as "responsible for screening Religious Food Diet Request[s]" or as participants in the alleged "sting operation." *Id.* at 6, 16, 18. Plaintiff's allegations against Defendants Willis, Jones, Vaughn Davis, Wenneker, and Jennifer Davis are limited to their roles at intake, their statements that his property was in the evidence room, their failure to respond to

his grievances and requests, and, as to Defendant Jennifer Davis, the denial of his public records requests. *Id.* at 12–15. As discussed below, none of that conduct supports a constitutional claim. Plaintiff's many allegations against "Defendants" collectively, such as his assertion that "All Defendants (1) (2) and (3) violated Religious Right," *id.* at 20, do not identify what any particular Defendant did and therefore do not suffice. *See Leer*, 844 F.2d at 633. Finally, Plaintiff names "Yolo County Jail Kitchen Staff" as a Defendant. ECF No. 1 at 6. An unidentified group of employees is not a proper defendant. If Plaintiff wishes to sue particular kitchen employees, he must identify each person, by name or, if the name is unknown, as a separately numbered Doe defendant, and must allege what that person did. *See Iqbal*, 556 U.S. at 676.

**B. Official Capacity Claims and Private Defendants**

Plaintiff sues each Defendant in an individual, official, and municipal capacity. ECF No. 1 at 6, 8–9. There is no separate "municipal" capacity, and the Court construes these designations as official-capacity claims. An official-capacity suit "is, in all respects other than name, to be treated as a suit against the entity" that employs the official. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Plaintiff's official-capacity claims under § 1983 against the jail officials are therefore claims against Yolo County. A local governmental entity may not be held liable under § 1983 for an injury inflicted solely by its employees or agents; it is responsible only when "execution of a government's policy or custom . . . inflicts the injury." *Monell*, 436 U.S. at 694. To state such a claim, a plaintiff must allege facts showing "(1) that [the plaintiff] possessed a constitutional right of which [he] was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotation marks omitted).

Plaintiff refers to a jail policy that limits segregation to inmates who pose a serious threat, ECF No. 1 at 6, but he alleges that Defendants violated that policy, not that the policy caused any violation of his rights. Nor does Plaintiff allege that Defendant Velazquez's statement that Plaintiff was "not allowed" to have law books and magazines reflected a county policy rather than Defendant Velazquez's own decision. Plaintiff does not otherwise identify any county policy,

custom, or practice that caused the deprivations he describes. Plaintiff's official-capacity claims under § 1983 are therefore not cognizable. Plaintiff's RLUIPA claim, which may be pursued only against Defendants in their official capacities, is addressed separately below.

Plaintiff also names National Food Group and the Director of ViaPath Technologies, both of which appear to be private companies or their employees. Section 1983 reaches only conduct under color of state law, and private parties generally do not act under color of state law. *See Price v. Hawaii*, 939 F.2d 702, 707–08 (9th Cir. 1991); *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999). A private party's conduct may be attributed to the State in limited circumstances, such as when the private party performs a function traditionally and exclusively reserved to the State or acts jointly with state officials. *See Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003). Plaintiff alleges only that National Food Group supplies the soy milk served at the jail, ECF No. 1 at 8, 30, which does not make it a state actor. As discussed below, the Court need not decide whether ViaPath acts under color of state law, because Plaintiff's allegations against its Director fail to state a claim in any event.

**C. Harassment**

Plaintiff alleges that he returned to the jail from a commitment under California Penal Code § 1370, ECF No. 1 at 4, 25, which governs criminal defendants found mentally incompetent to stand trial. It therefore appears that Plaintiff was a pretrial detainee during the events at issue. The Eighth Amendment's prohibition on cruel and unusual punishment governs claims by convicted prisoners, while claims by pretrial detainees arise under the Due Process Clause of the Fourteenth Amendment, under which "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 & n.16 (1979). Pretrial detainees retain at least those constitutional rights enjoyed by convicted prisoners, see id. at 545, and the Court evaluates Plaintiff's First Amendment claims under the same standards that apply to prisoners. In any amended complaint, Plaintiff should state whether he was a pretrial detainee or a convicted prisoner at the time of the events alleged.

/ / /

/ / /

**D. Free Exercise of Religion, RLUIPA, and RFRA**

1. First Amendment Free Exercise

Inmates retain the protections of the First Amendment, including its directive that no law shall prohibit the free exercise of religion. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). To state a free exercise claim, a plaintiff must allege that a defendant substantially burdened the practice of his religion by preventing him from engaging in conduct that he sincerely believes is consistent with his faith, without any justification reasonably related to legitimate penological interests. *See Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008); *Jones v. Williams*, 791 F.3d 1023, 1031–32 (9th Cir. 2015); *Turner v. Safley*, 482 U.S. 78, 89 (1987). The question is whether the plaintiff's belief is sincerely held and rooted in religious belief, not whether the practice is central to his religion. *See Shakur*, 514 F.3d at 884–85. Inmates "have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987) (per curiam).

Liberally construed, Plaintiff states cognizable free exercise claims against Defendants Hamblin, Gaines, Keenan, and Hall. Plaintiff alleges that he is Muslim, that his faith requires a halal diet, and that he asked Defendant Gaines in writing to move him from the kosher diet to a halal diet. ECF No. 1 at 7, 17, 21. He alleges that these four Defendants came to his cell and told him not only that he could not have a halal diet, but also that he could not have a kufi, prayer rug, prayer beads, prayer oils, or a Quran. *Id.* at 17. He also alleges that the kosher diet he receives has included pork. *Id.* Taken as true, the refusal to permit a Muslim detainee to possess a Quran or any basic devotional items, together with the denial of a diet consistent with his religious dietary requirements, would substantially burden his religious exercise. *See Shakur*, 514 F.3d at 884–85; *McElyea*, 833 F.2d at 198. Whether any of these restrictions is reasonably related to a legitimate penological interest cannot be determined from the face of the complaint. These allegations are sufficient at the screening stage.

Plaintiff's remaining free exercise allegations do not state a claim against any other Defendant. Plaintiff alleges that he has been denied Muslim religious services, ECF No. 1 at 7,

but he does not allege what services he requested, whom he asked, or what any Defendant did in response. Plaintiff's allegation that he must pay to hear the Quran on the jail's kiosk is addressed below in connection with his claims against ViaPath, and his allegation that Defendant Velazquez destroyed his religious magazines is addressed below in connection with the destruction of his property.

2. RLUIPA and RFRA

RLUIPA provides that no government shall impose a substantial burden on the religious exercise of a person confined to an institution unless the burden furthers a compelling governmental interest and is the least restrictive means of furthering that interest. *See* 42 U.S.C. § 2000cc-1(a); *Holt v. Hobbs*, 574 U.S. 352, 357–58 (2015). A substantial burden is one that is "oppressive to a significantly great extent." *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) (internal quotation marks omitted). For the reasons discussed above, Plaintiff's allegations that Defendants Hamblin, Gaines, Keenan, and Hall denied him a halal diet, a Quran, and other devotional items are sufficient to allege a substantial burden at the screening stage.

RLUIPA's remedies are limited, however. RLUIPA does not authorize damages against officials in their individual capacities. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014). Plaintiff's RLUIPA claim therefore may proceed only for injunctive relief against Defendants Hamblin, Gaines, Keenan, and Hall in their official capacities. Plaintiff is advised that a claim for injunctive relief concerning conditions at a particular facility generally becomes moot if the plaintiff is transferred from that facility and there is no reasonable expectation that he will return. *See Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995); *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991).

Plaintiff's RFRA claim is not cognizable. RFRA does not apply to state and local governments or their officials. *See City of Boerne v. Flores*, 521 U.S. 507, 536 (1997).

**E. Equal Protection**

The Equal Protection Clause requires that persons who are similarly situated be treated alike. *See City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To state an equal protection claim based on religion, a plaintiff must allege facts showing that the defendant

acted with an intent or purpose to discriminate against him because of his religion. *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Inmates must be afforded a "reasonable opportunity of pursuing [their] faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Shakur*, 514 F.3d at 891 (quoting *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam)).

Plaintiff does not allege that any named Defendant treated him differently from similarly situated inmates of other faiths, such as by permitting inmates of other religions to have religious texts, devotional items, or religious diets that Plaintiff was denied. Nor does he allege facts showing that any Defendant acted because Plaintiff is Muslim. Plaintiff's allegation that Defendants have a history of pressuring him to adopt their Christian faith, ECF No. 1 at 16, is conclusory and, as Plaintiff describes it, relates to events in 2023. And inmates on a kosher diet are not similarly situated to inmates on the regular diet with respect to the variety of their meals; nothing in the complaint suggests that the differences between the two menus reflect an intent to discriminate on the basis of religion. *See id.* at 8, 28–29. Plaintiff's conclusory references to "religious discrimination" do not suffice. *See Iqbal*, 556 U.S. at 678. Plaintiff's equal protection claim is therefore not cognizable as pleaded.

**F. Destruction of Property**

1. <u>First Amendment</u>

Inmates retain a First Amendment right to receive and possess publications, subject to restrictions that are reasonably related to legitimate penological interests. *See Thornburgh v. Abbott*, 490 U.S. 401, 407–08, 413 (1989); *Turner*, 482 U.S. at 89. Plaintiff alleges that Defendant Velazquez told him that he had destroyed Plaintiff's law books, magazines, and religious magazines "because I am not allowed to have Law Books, Magazines, or Religious Magazines." ECF No. 1 at 14; *see also id.* at 5. Liberally construed, Plaintiff alleges that Defendant Velazquez destroyed his reading materials based on a categorical view that Plaintiff could not possess any law books, magazines, or religious publications. Plaintiff also alleges that at least some of these books were mailed to him at the jail in January 2025, *id.* at 11, 24, which suggests that he was previously permitted to have them. Whether the destruction of these

materials was reasonably related to a legitimate penological interest cannot be determined from the face of the complaint. At the screening stage, these allegations are sufficient to state a cognizable First Amendment claim against Defendant Velazquez.

Plaintiff does not, however, state a First Amendment claim against any other Defendant based on the loss of his books and magazines. He does not allege that any other Defendant destroyed his property, directed its destruction, or knew that Defendant Velazquez would destroy it. That other Defendants told Plaintiff his property was in the evidence room or later provided him a locker containing only part of his property, ECF No. 1 at 12–14, does not show that they were responsible for its destruction.

2. Due Process

Plaintiff also contends that the loss of his property violated the Fifth and Fourteenth Amendments. ECF No. 1 at 1, 6, 20. The Due Process Clause of the Fifth Amendment applies only to the federal government, *see Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001), and Plaintiff does not allege that any Defendant is a federal actor. The Court therefore considers this claim under the Fourteenth Amendment.

The Due Process Clause protects prisoners from being deprived of property without due process of law, *see Wolff v. McDonnell*, 418 U.S. 539, 556 (1974), and prisoners have a protected interest in their personal property, *see Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974). An authorized, intentional deprivation of property, meaning one carried out pursuant to established state procedures, regulations, or statutes, is actionable under the Due Process Clause. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–36 (1982); *Piatt v. MacDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985) (en banc). But neither a negligent nor an unauthorized intentional deprivation of property by a state employee violates due process if a meaningful post-deprivation remedy is available. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984). California law provides an adequate post-deprivation remedy for property deprivations. *See Barnett v. Centoni*, 31 F.3d 813, 816–17 (9th Cir. 1994) (per curiam) (citing Cal. Gov't Code §§ 810–895).

Plaintiff does not allege that his property was destroyed pursuant to an established jail procedure. To the contrary, he alleges that officers assured him that his property was safe in the

evidence room, that he received no receipt for the property taken, and that its destruction amounted to "illegal censorship." ECF No. 1 at 4–5, 13. These allegations describe an unauthorized deprivation, for which California's post-deprivation remedies provide the process that is due. That Plaintiff's state tort claim allegedly was not filed, *id.* at 3, does not change this analysis, because the question is whether an adequate state remedy is available, not whether Plaintiff has successfully pursued it. Plaintiff's due process claim based on the loss of his property is therefore not cognizable. If Plaintiff contends that his property was destroyed pursuant to an established jail policy or procedure, he must identify the policy and allege facts showing who applied it to him and how.

To the extent Plaintiff alleges that the destruction of his property was intended as "punishment," ECF No. 1 at 6, he alleges no facts suggesting that any Defendant destroyed his property in order to punish him. *See Bell*, 441 U.S. at 538–39. The only reason Plaintiff attributes to the destruction, that he was not allowed to possess law books and magazines, is addressed above in connection with his First Amendment claim.

**G. Access to the Courts**

Inmates have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996). To state an access-to-courts claim, a plaintiff must allege an "actual injury," meaning "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Nev. Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011) (quoting *Lewis*, 518 U.S. at 348). The plaintiff must also describe the underlying claim that was lost or frustrated. *See Christopher v. Harbury*, 536 U.S. 403, 415–16 (2002).

Plaintiff alleges that officers "picked and chose" which legal papers he could keep, that his legal mail and legal materials are missing, and that he needs them to prosecute his federal cases. ECF No. 1 at 12–14. But he does not allege that he missed any deadline, lost any case, or was otherwise prevented from presenting any claim as a result. His reference to "mail censorship" in several of his other cases, *id.* at 18, is likewise unsupported by any facts. Plaintiff's access-to-courts claim is therefore not cognizable.

### H. Meals and Soy Milk

1. <u>Adequacy of Food</u>

A pretrial detainee's claim regarding the conditions of his confinement is evaluated under an objective deliberate indifference standard. *See Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018); *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1070–71 (9th Cir. 2016) (en banc). Under that standard, the detainee must show that "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." *Gordon*, 888 F.3d at 1125. The defendant's conduct must be objectively unreasonable, which requires "more than negligence but less than subjective intent—something akin to reckless disregard." *Castro*, 833 F.3d at 1071. As to food, the Constitution requires only that inmates receive "food that is adequate to maintain health." *Foster v. Runnels*, 554 F.3d 807, 813 (9th Cir. 2009) (quoting *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993)). The food need not be tasty or aesthetically pleasing. *See LeMaire*, 12 F.3d at 1456.

Plaintiff alleges that the kosher menu repeats a small number of meals in small portions, leaving him hungry and malnourished, and that both his meals and the soy milk he receives have caused him stomach pain. ECF No. 1 at 8, 26, 28. A repetitive menu does not by itself deprive an inmate of adequate nutrition, and Plaintiff does not allege facts, such as weight loss, a diagnosed medical condition, or the amount of food he actually receives, showing that his diet is inadequate to maintain his health. Nor does Plaintiff link any Defendant to an objectively unreasonable decision. The only Defendant he connects to these complaints is Defendant Hamblin, who reviewed his grievances at the second level. *Id.* at 27, 29. The grievance responses state that Plaintiff's kosher diet was approved by a certified nutritionist and that he could return to regular milk if he did not want the soy milk. *Id.* at 26–29. Plaintiff does not allege facts suggesting that

Defendant Hamblin's reliance on the nutritionist's approval was unreasonable or that Defendant Hamblin knew that Plaintiff's diet was causing him serious harm. Plaintiff's claim regarding the adequacy of his food is therefore not cognizable as pleaded. If Plaintiff amends, he should describe the food he receives, how it has affected his health, which Defendant was responsible, and what each Defendant knew.

2. Labeling and False Advertising

Plaintiff also contends that the soy milk and kosher meals are not labeled as federal law requires, that the soy milk's nutrition facts are false, and that the failure to label these products denies him reading material in violation of the First Amendment. ECF No. 1 at 8–9, 20. These allegations do not state a claim. The Federal Food, Drug, and Cosmetic Act does not create a private right of action; it is enforced by the federal government. *See* 21 U.S.C. § 337(a); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001). Section 1983 provides a remedy only for violations of federal law, and any claim for false advertising arises, if at all, under state law. *See Galen v. County of Los Angeles*, 477 F.3d 652, 662 (9th Cir. 2007). While it is understandable that Plaintiff is concerned about nutritional content of his food, Plaintiff identifies no authority, and the Court is aware of none, holding that the First Amendment entitles an inmate to nutritional labeling on the food he is served. And Plaintiff's own exhibits show that he was given the nutrition facts for the soy milk he asked about. ECF No. 1 at 26, 30.

**I. Grievances, Request Forms, and Public Records**

Plaintiff alleges that Defendants failed to provide grievance forms, did not respond to his grievances or inmate request forms, resolved his property grievances through a meeting rather than a hearing, and refused to hear additional grievances. ECF No. 1 at 2, 4–6, 14–15. Inmates have no constitutional entitlement to a specific grievance procedure, and the failure to process or respond to grievances does not, by itself, violate the Constitution. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).

Plaintiff also alleges that Defendant Jennifer Davis denied his requests under the California Public Records Act for copies of his inmate request forms, his disciplinary and classification records, and related policies. ECF No. 1 at 15, 21. Any violation of the Public

Records Act is a matter of state law that is not cognizable under § 1983. *See Galen*, 477 F.3d at 662. And the Constitution does not itself guarantee a right of access to government records. *See McBurney v. Young*, 569 U.S. 221, 232 (2013); *Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978) (plurality opinion). Plaintiff's claims based on the handling of his grievances, request forms, and records requests are therefore not cognizable.

**J. Housing Placement**

Plaintiff alleges that he has been placed on 23-hour lockdown in disciplinary housing without being told why, in violation of a jail policy that limits segregation to inmates who pose a serious threat. ECF No. 1 at 6, 13, 15. A pretrial detainee may not be punished, and he may be placed in disciplinary segregation as punishment for violating a jail rule only after receiving due process. *See Mitchell v. Dupnik*, 75 F.3d 517, 524 (9th Cir. 1996); *Wolff*, 418 U.S. at 563–66. Restrictions imposed for legitimate, non-punitive purposes, such as maintaining institutional security, are not punishment. *See Bell*, 441 U.S. at 538–40. Plaintiff does not allege who placed him in restrictive housing, when, or for what reason, and he does not allege that any named Defendant was involved in that decision. And a violation of jail policy does not, by itself, give rise to liability under § 1983. *See Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009). This claim is therefore not cognizable as pleaded. If Plaintiff amends, he must allege facts showing who placed him in restrictive housing, the circumstances of the placement, and what process, if any, he received.

**K. Retaliation**

Plaintiff lists "Retaliation" among his claims, ECF No. 1 at 1, but he does not allege facts supporting such a claim. Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). Plaintiff does not allege that any Defendant took adverse action against him because he filed grievances or lawsuits or engaged in other protected conduct. Plaintiff's retaliation claim is therefore not

cognizable.

**L. ViaPath Technologies**

Plaintiff alleges that the Director of ViaPath Technologies violated the First and Fourteenth Amendments, RFRA, RLUIPA, the Sherman Act, the False Claims Act, and RICO by charging him $7 per hour to listen to an audiobook of the Quran on the jail's kiosks and tablets. ECF No. 1 at 9–10. Even assuming that ViaPath acts under color of state law, these allegations do not state a claim. Plaintiff does not allege that ViaPath charges more for religious content than for other content, that the fee prevents him from practicing his faith, or that ViaPath had any role in the decision to deny him a Quran. *Cf. Johnson v. California*, 207 F.3d 650, 656 (9th Cir. 2000) (finding no authority for the proposition that prisoners are entitled to a specific rate for telephone calls, absent facts showing that the rate is so exorbitant as to deprive them of access altogether). To the extent Plaintiff must pay to read the Quran because jail officials refused to allow him a copy, that claim lies against the officials who denied his request, and it is addressed above.

Plaintiff's federal statutory claims against ViaPath also fail. A claim under § 1 of the Sherman Act requires a contract, combination, or conspiracy that unreasonably restrains trade, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553–57 (2007), and Plaintiff alleges no such agreement. A False Claims Act claim may be brought by a private person only on behalf of the United States, and a pro se litigant may not prosecute such an action. *See Stoner v. Santa Clara Cnty. Office of Educ.*, 502 F.3d 1116, 1126–28 (9th Cir. 2007). And a civil RICO claim requires, among other things, conduct of an enterprise through a pattern of racketeering activity that injures the plaintiff's business or property, *see* 18 U.S.C. § 1964(c); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985), which Plaintiff does not allege. Plaintiff's remaining allegations against ViaPath are addressed below. Because the complaint states no claim against ViaPath's Director, Plaintiff's request for discovery to learn the Director's identity, ECF No. 1 at 10, is premature.

**M. Remaining Allegations**

The Court must dismiss claims that are frivolous, see 28 U.S.C. § 1915A(b)(1), including claims whose factual contentions are "clearly baseless," such as allegations that are "fanciful," "fantastic," or "delusional." *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992) (quoting *Neitzke v.*

*Williams*, 490 U.S. 319, 325, 327–28 (1989)). Plaintiff's allegations that ViaPath and jail staff have used television "T.V. Police webcast" announcements and "Amber Alerts" to label him a terrorist and incite a riot, that ViaPath impersonated the FBI's crime-reporting center, that other inmates working for Defendants cast spells on him by reading the Quran backwards, and that something placed inside him during a prior hospitalization is used to track his movements with "sound engineering cloning technology" and to play role-playing games with his mind, ECF No. 1 at 10, 18–20, fall within that category and do not support any claim.

To the extent Plaintiff alleges that other inmates harassed him, banged on his door, and threatened to kill him unless he stopped being Muslim, ECF No. 1 at 18–19, he does not state a claim against any Defendant. Jail officials must take reasonable measures to protect detainees from violence by other inmates, but a detainee's failure-to-protect claim requires facts showing that a particular defendant made an intentional decision that put the detainee at substantial risk of serious harm and failed to take reasonable available measures to abate that risk. *See Castro*, 833 F.3d at 1071. Plaintiff does not allege that he told any named Defendant about these threats or that any Defendant otherwise knew of the threats and failed to respond. And verbal harassment, standing alone, does not violate the Constitution. *See Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996), amended by 135 F.3d 1318 (9th Cir. 1998); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987).

Finally, Plaintiff's allegations concerning events in 2023, including his allegation that Defendants used the jail infirmary to subject him to "Religious Torture," are not linked to any claim in this action, and Plaintiff indicates that those events are the subject of *Bennett v. ViaPath Technologies*, No. 2:24-cv-0769-TLN-CKD. ECF No. 1 at 16. Plaintiff may not use this action to pursue claims that duplicate those he has raised in another action. *See Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007), overruled on other grounds by *Taylor v. Sturgell*, 553 U.S. 880, 904 (2008).

## III. CONCLUSION

The complaint states cognizable First Amendment free exercise claims against Defendants Hamblin, Gaines, Keenan, and Hall; a cognizable RLUIPA claim for injunctive relief against

Defendants Hamblin, Gaines, Keenan, and Hall in their official capacities; and a cognizable First Amendment claim against Defendant Velazquez based on the destruction of Plaintiff's books and magazines. The complaint does not state any other cognizable claim, including any claim against Defendants Willis, Jones, Vaughn Davis, Wenneker, Jennifer Davis, Praest, Yolo County Jail Kitchen Staff, National Food Group, or the Director of ViaPath Technologies; any official-capacity claim under § 1983; any claim under RFRA, the Equal Protection Clause, the Due Process Clause, the Federal Food, Drug, and Cosmetic Act, the Sherman Act, the False Claims Act, or RICO; or any claim for denial of access to the courts, inadequate food, retaliation, or the handling of Plaintiff's grievances and records requests.

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete. *See* E.D. Cal. L.R. 220. An amended complaint must be complete in itself without reference to any prior pleading. *See id.* An amended complaint must bear the docket number assigned to this case and be labeled "First Amended Complaint."

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227 (9th Cir. 1980). The amended complaint must allege in specific terms how each named defendant is involved and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. *See May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Because the complaint otherwise states cognizable claims, Plaintiff is not required to file an amended complaint; if no First Amended Complaint is filed within the time allowed, the Court will construe Plaintiff's silence as an election to proceed on the original complaint as screened, recommend dismissal of all defective claims and remaining defendants, and issue further orders regarding service of

process.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Within **thirty (30) days** from the date of service of this order, Plaintiff may file a First Amended Complaint curing the deficiencies identified in this order; and
2. If Plaintiff does not file a First Amended Complaint within **thirty (30) days**, this action will proceed solely on the cognizable claims against Defendants Hamblin, Gaines, Keenan, Hall, and Velazquez as set forth above, and the Court will recommend dismissal of all other claims and defendants.

**IT IS SO ORDERED.**

Dated: November 9, 2026

ILA C. DEISS
UNITED STATES MAGISTRATE JUDGE